UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------
IN RE:                                    )    CASE NO. 07-20238
                                          )
ANN-MARIE ROSE ADAMS                      )    CHAPTER 7
                                          )
          DEBTOR.                         )    RE: DOC. I.D. NO. 139
------------------------------------------------------

### BRIEF MEMORANDUM AND ORDER
### DENYING DEBTOR'S REQUEST FOR A CONTINUANCE

By letter dated February 9, 2008, Doc. I.D. No. 139, the Debtor requested the Court continue a hearing on a motion for relief from stay presently scheduled for February 24, 2009, to a date on or after May 10, 2009 (hereafter, the "Request"). For the reasons explained hereafter, the Request is denied.

On October 26, 2007, Towpath Association, Inc. (the "Creditor") filed a Motion for Relief from Stay, Doc. I.D. No. 70, seeking relief from the automatic stay of Section 362(a) to allow it to commence a foreclosure action for common charges due from the Debtor related to certain real property. During the next sixteen months, the progeny of that motion reveals, *inter alia*, sundry continuances, a Stipulated Order, Doc. I.D. No. 86, an Affidavit of Non-Compliance with the Stipulated Order, Doc. I.D. No. 88, an Order granting the Motion for Relief, Doc. I.D. No. 89, a Motion to Vacate, Doc. I.D. No. 91, an Order granting the Motion to Vacate, Doc. I.D. No. 106, a second renewed Motion for Relief from Stay, Doc. I.D. No. 119, an Order For Relief from Stay (the "Order"), Doc. I.D. No. 126, granting the second Motion for Relief, and a Motion to Vacate the [second] Order, Doc. I.D. No. 137.

On the record of February 5, 2009 (Tr. e.g., 4:52:00) upon consideration of the

Motion to Vacate the [second] Order, the Order was Vacated *conditionally* (subject to payment by bank check in the amount of $3,000.00 by Monday, February 9, 2009), see Margin Order, Doc. I.D. No. 137, entered February 5, 2009, and a hearing to further consider the second Motion for Relief from Stay, Doc. I.D. No. 119, was scheduled for February 24, 2009 at 10:00 AM (the "Hearing"). The Hearing was specially scheduled to accommodate the Debtor's "one year follow up" and "blood tests" scheduled for February 16, 2009, at the National Institute of Health, Maryland ("NIH"), plus the possibility that "doctor consultations" related thereto could take a "couple of days", Tr. 4:53:30. The Request does not reflect that this schedule has changed and does not alter the Court's understanding of the Debtor's medical condition at the time the Hearing was specially scheduled. The Request is not submitted with the consent of the Creditor.[1]

In addition, the Court notes that it appears that the Debtor *may* not have tendered the above-referenced bank check in good faith as a copy of that check, attached to the Request, bears the notation "Pd in full current up to feb 2009". In light of this "notation", the Creditor *may* be entitled to prompt reinstatement of the Order. In light of the history of this matter, the Creditor certainly is entitled to prompt consideration of its second Motion for Relief from Stay.

Accordingly, the Request is **DENIED** *without prejudice* to request a reasonable continuance of the Hearing in the event the Debtor (i) is now scheduled to be actually present at NIH, (ii) is now scheduled to be undergoing significant, medical tests or procedures, for example, a Magnetic Resonance Imaging Scan (MRI) or Computerized

---

[1] The Request states "I have talked to the attorneys involved about this situation".

Axial Tomography (CAT Scan), *on February 24, 2009,*[2] or (iii) with the consent of the Creditor.

Dated: February 10, 2009                                         BY THE COURT

                                                                 Albert S. Dabrowski
                                                                 Chief United States Bankruptcy Judge

---

[2] In the Request, the Debtor represented, *inter alia*, "I will be needed to do blood work, scans, MRIs and other tests [during the next three months]."

3